**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LOUIS BROWN,**

                                **Plaintiff,**                    Case No. **6:06-cv-661-Orl-22GJK**

                                                      Also filed in **6:06-cv-556-Orl-22GJK**
**-vs**                                                             **6:06-cv-650-Orl-22GJK**
                                                                      **6:06-cv-660-Orl-22GJK**
                                                                      **6:06-cv-662-Orl-22GJK**
                                                                      **6:06-cv-663-Orl-22GJK**
**BRAY & GILLESPIE III MANAGEMENT**      **6:06-cv-891-Orl-22GJK**
**LLC; OCEAN RESORTS; OCEAN**
**WATERS, LLC; and BRAY & GILLESPIE,**
**INC.,**

                                **Defendants.**
_____

## ORDER

This cause comes before the Court on Defendants' Motions to Strike Plaintiffs' Expert Designation and Opinions of three proposed experts: Mr. Matthew Freije (Case No. 6:06-cv-661 Doc, No. 116[1]), Dr. Judith Samkoff (Doc. No. 114), and Dr. Paul J. Sedacca (Doc. No. 115). The Court also considers Defendants' Consolidated Motion in Limine. Doc. No. 151. Plaintiffs opposed the Motions to Strike their experts and the Consolidated Motion in Limine. Doc. Nos. 137, 138, 140, and 160. Neither the Motions to Strike with respect to Mr. Freije and Dr. Sedacca nor the Consolidated Motion in Limine[2] require analysis specific to the facts of each of the seven related cases listed in the caption

---

[1]The Court refers only to docket entries for Case No. 6:06-cv-661, which is the first case set for trial.

[2]Though Defendants filed a separate Consolidated Motion in Limine in each case, Defendants' arguments appear to vary only to the extent that each motion reflects the proper Plaintiffs and seeks

above. Thus, these motions may be addressed here in a single Order. Dr. Judith Samkoff's expert reports contain patient-specific information (s*ee, e.g.,* Doc. No. 114-2; Case No. 6:06-cv-660 Doc. No. 105-2; Case No. 6:06-cv-650 Doc. No. 77-2), but Defendants' arguments in support of their Motions to Strike Dr. Samkoff's testimony are fundamentally the same for each Plaintiff. In all the cases, Defendants argue that Dr. Samkoff ignores negative test results and applies incorrect definitions. Doc. No. 114 pp. 2-3. For different Plaintiffs, the number and type of tests differ, but Defendants' arguments are the same. Thus, this Order also addresses the Motions to Strike Dr. Samkoff's testimony in all seven cases.

Upon carefully considering the Motions to Strike, Plaintiffs' responses, and the evidence presented at the May 20, 2008 hearing on the motions, the Court grants in part and denies in part Defendants' Motion to Strike the testimony of Mr. Freije, denies Defendants' Motion with respect to Dr. Samkoff, and grants Defendants' Motion with respect to Dr. Sedacca. The Court also grants in part and denies in part Defendants' Motion in Limine.

**Introduction**

Plaintiffs in these seven cases were guests at the Sea Garden Inn in Daytona Beach Shores, Florida, for various lengths of time between December 2005 and February 2006. Doc. No. 14 pp. 2-3. Plaintiffs allege that they were exposed to *Legionella* bacteria at the indoor spa at the Sea Garden Inn and therefore developed Legionnaire's Disease. *Id.* at p. 6; Doc. No. 147 p. 2. Plaintiffs have alleged

---

exclusion of mention of other Plaintiffs. *See, e.g.,* Doc. No. 151 p. 9; *compare* Case No. 6:06-cv-660 Doc. No. 142 p. 9. Because the Court's analysis of the issues is the same in all cases, the Court rules on all seven Motions in Limine in this Order.

negligence, breach of contract, and loss of consortium claims and seek punitive damages.[3]  Doc. No. 14 pp. 4-8.  Plaintiffs intend to call four experts at trial (Doc. No. 147 pp. 29-31), of which Defendants have moved to strike three.  Mr. Freije would testify to the "transmission of *Legionella*" and "the standard of care required of hotels in the prevention of exposure to it."  *Id.* at p. 30.  Dr. Samkoff would testify that Plaintiffs suffered from Legionnaire's Disease and that the cause was exposure at the Sea Garden Inn.  Doc. No. 114-2 p. 2.  Dr. Sedacca would testify that Plaintiffs sustained infection with *Legionella*, that the Sea Garden Inn was the cause, and that the care Plaintiffs received for their illness was reasonable.  Doc. No. 115-2 pp. 2-3.

## Analysis

**I. Standard of Review**

Fed. R. Evid. 702 governs the admission of expert testimony at trial.  The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993), laid out the standard for determining the admissibility of experts under Fed. R. Evid. 702.  The trial judge has a two-part duty to ensure that any and all scientific testimony or evidence admitted is not

---

[3] The punitive damages claim has been dropped in three of the cases and is the subject of a partial summary judgment motion in the others.  *See* Doc. No. 46, 47.

only relevant, but reliable."[4] *Daubert,* 509 U.S. at 589. The *Daubert* Court set forth a non-exhaustive list of relevant factors to consider in determining whether the methodology employed is reliable. *Id.* at 593-94. The factors include whether the methods can be tested or have been subject to peer review, the potential rate of error, and whether the methods are generally accepted. *Id.* Since *Daubert*, other courts have looked at additional factors, including whether an expert has properly accounted for alternative explanations (*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 154-55 (1999)), whether the conclusions were reasoned as carefully as they would have been outside of litigation (*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 886 (10th Cir. 2005)), and whether an accepted premise is being extrapolated to unfounded claims (*Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144-46 (1997)).

The Eleventh Circuit applied *Daubert* in *Tuscaloosa v. Harcros Chems., Inc*., 158 F.3d 548, 562 (11th Cir. 1998), and held that expert testimony may be admitted if three requirements are met. First, the expert must be qualified to testify competently regarding the matter he or she intends to address. *Id*. Second, the methodology used must be reliable as determined by the *Daubert* inquiry. *Id*. Third, the testimony must assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue. *Id*.

The burden of making this showing is on the party offering the expert, and admissibility must be shown by a preponderance of evidence. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002) (citations omitted). While "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence," (*Daubert*, 509 U.S. at 596 (citations omitted)),

---

[4]In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999), the Supreme Court made it clear that *Daubert* applies to all types of expert testimony, scientific or not.

the Court is an essential gatekeeper and in all cases "must take care to weigh the value of [expert testimony] against its potential to mislead or confuse." *United States v. Frazier*, 387 F.2d 1244, 1263 (11th Cir. 2004). Trial judges have considerable discretion in deciding how to evaluate expert testimony and whether it is reliable and relevant. *Kumho*, 526 U.S. at 152.

**II. Motion to Strike Testimony of Mr. Freije**

**A. Mr. Freije's Qualifications**

Mr. Freije is a mechanical engineer who has authored articles on control of *Legionella* and has advised numerous businesses on its detection and control. Doc. No. 137 pp. 1, 5. Defendants object to Mr. Freije's qualifications (Doc. No. 116 pp. 2-3) and attack the bases he gives for certain opinions. *Id.* at pp. 13-15. As for qualifications, Mr. Freije is not a microbiologist or epidemiologist, but his authorship, consulting, and sampling experience is sufficient to qualify him as an expert in the field of *Legionella* control in spa and pool systems. *See Tuscaloosa*, 158 F.3d at 562, 563-64. However, the Court holds that Mr. Freije is not qualified to testify on the cause of Plaintiffs' illness or on other epidemiological or immunological matters.

**B. Mr. Freije's Six Opinions**

The Eleventh Circuit's ruling in *Tuscaloosa,* 158 F.3d at 562*,* requires the Court to consider whether Mr. Freije's testimony is reliable under *Daubert* and whether his opinions will assist the trier of fact. Defendants argue that Mr. Freije's testimony will not assist the trier of fact, because almost all of his opinions merely regurgitate deposition testimony and facts from the case, improperly giving the imprimatur of expert opinion to alleged facts. Doc. No. 116 p. 13. Plaintiffs respond that Mr. Freije's opinions will help the jury weigh technical evidence regarding spa maintenance that will be presented at trial. Doc. No. 137 pp. 8-9. The Court assesses Mr. Freije's opinions individually.

Mr. Freije's first opinion is that "[t]he temperature, humidity, and poor ventilation in the indoor spa area, more likely than not, increased the distance that *Legionella* bacteria transmitted from the spa could travel and still remain infectious." Doc. No. 116-2 p. 3. Defendants argue that this opinion is vague and speculative (Doc. No. 116 p. 7), and that Mr. Freije lacks the qualifications to testify as to the ecology of *Legionella* or the distance it may travel (Doc. No. 116 p. 10). However, Mr. Freije is qualified to testify based on his experience as to the conditions that contribute to the distance *Legionella* can travel. Defendants will have the opportunity to cross-examine him regarding his qualifications and whether the opinion he offers with respect to the travel of *Legionella* bacteria is too speculative or vague. The Court holds that Mr. Freije is qualified to testify as to the conditions in indoor pools and spas that affect the growth of *Legionella* bacteria, and therefore his first opinion is admissible.

Defendants also cite the fact that an Arizona district court disqualified Mr. Freije as an expert on the pathology of *Legionella*. Doc. No. 116 p. 11 (citing *Sudbeck v. Sunstone Hotel Props., Inc.*, No. 2:04-cv-1535, 2006 WL 2728624, slip op. at 6 (D. Ariz. July 26, 2006) (Preliminary Order)). But, even Defendants admit that the same Arizona district court held that Mr. Freije was qualified to testify as to the appropriate measures to be undertaken to control *Legionella*. *Id.* To know what measures will control *Legionella*, Mr. Freije must have some experience in and awareness of how *Legionella* travels. Thus, Mr. Freije's first opinion is admissible. Certainly, Mr. Freije would not be permitted to testify extensively on the microbiological processes of *Legionella*, in which Mr. Freije himself admits he is not an expert. Doc. No. 137 p. 1, 5; Freije Dep. 15:1-16:24; 27: 13-16.

Mr. Freije's second opinion is that "[t]est results for the samples collected on 1/26/06 cannot be relied upon to determine the source of the outbreak because the samples were not collected

-6-

properly[,]" and relatedly, in his third opinion, Mr. Freije states that "[t]est results for samples collected from the indoor spa pool after 1/26/06 do not indicate the prior risk associated with it." Doc. No. 116-2 p. 6. Defendants argue that these opinions lack bases, and that the jury can evaluate this information on its own. Doc. No. 116 p. 14. The Court holds that Mr. Freije may testify as to why he is not surprised that the test results were negative, based on his experience and knowledge of proper sampling procedures. If Mr. Freije "speculates that James Hanskat 'may have' poured out the sodium thiosulfate contained in the sample bottle[,]" (*id.* (citing Doc. No. 116-2 p. 8)), without any basis for that opinion, Defendants will be able to expose the lack of basis to the jury on cross-examination.[5]

Mr. Freije's fourth opinion is that "[t]est results for samples collected from the domestic water system in February and March 2006 provide insufficient or unreliable data for identification of the source of the outbreak." Doc. No. 116-2 p. 7. Defendants argue that this opinion is speculative and lacks basis. Doc. No. 116 p. 14. Plaintiffs respond that the jury will not have knowledge about water testing and therefore that Mr. Freije's qualified testimony will assist the trier of fact. Doc. No. 137 pp. 7-8.

The Court holds that Mr. Freije may testify generally regarding *Legionella* detection and sampling. However, Mr. Freije may not make the bare allegation at trial that "[a] proficient laboratory may have found *Legionella* in samples that tested negative by the State of Florida laboratory[,]" as he

---

[5] Defendants also argue that Mr. Freije fails to include all bases for his second opinion and other opinions in the expert report, as required by Fed. R. Civ. P. 26(a)(2)(B)(i). While Mr. Freije's report should have been more complete, his opinion on the method of collecting samples put Defendants on notice that Mr. Freije will be testifying as to collection methods. Thus, there is no real concern that Defendants will be unable to adequately cross-examine Mr. Freije or rebut his testimony. *See* Fed. R. Civ. P. 26(a) Advisory Comm. Notes (1970) (subdivision b(4): Trial Preparation: Experts). The Court holds in its discretion that striking Mr. Freije's opinions would be an extreme remedy for a partial violation of Fed. R. Civ. P. 26.

did in the bases he listed for his fourth opinion. Doc. No. 116-2 p. 7. Mr. Freije lacks any basis for believing that the State of Florida's lab is not proficient, and the chart of test results for duplicative samples from other labs (not including the State of Florida's lab), is irrelevant to whether the test results from the Florida lab were reliable. Mr. Freije shall limit his testimony to relevant expert opinion regarding factors affecting test results and the meaning of the circumstances in which the various tests were actually performed.

Mr. Freije's fifth opinion is that "[p]rior to and after December 16, 2005, the operators of the hotel knew, or should have known, that hotel water systems, including whirlpool spas, present a risk of Legionnaire's Disease and must be maintained to minimize *Legionella* bacteria." Doc. No. 116-2 p. 8. Defendants argue that this opinion presents an impermissible legal conclusion. Doc. No. 116 p 14. The Court holds that this opinion is inadmissible, because it constitutes a legal conclusion as to what standard of care hotel operators owe their guests and invades the province of the jury as to what Defendants actually knew. Mr. Freije may testify as to how well known and publicized the dangers of *Legionella* bacteria are, based on his experience, but he may not testify as to what these Defendants knew or should have known.

Mr. Freije's sixth opinion is that "[t]he indoor spa maintenance and water treatment during December 2005 and January 2006 was [sic] substandard." Doc. No. 116-2 p. 10. Defendants argue that this opinion merely summarizes the factual record, a function that can and should be left to the jury. Doc. No. 116 p. 15. Plaintiffs respond that pool maintenance is a technical field requiring specialized knowledge that will assist the jury. Doc. No. 137 p. 9. The Court holds that Mr. Freije may testify as to what constitutes proper spa maintenance and whether or not Defendants were practicing it during the relevant period of time. However, Mr. Freije may not testify as to events that

occurred outside the relevant time period,[6] including violations that occurred in late 2006 and 2007, long after Plaintiffs' illnesses. Thus, the February 2007 letters from the County regarding the state of the spa and the October 2006 and February 2007 state inspection reports cited as the basis for Mr. Freije's sixth opinion will not be admitted.

Additionally, Mr. Freije notes that "[e]xhibits to be used at trial may include publications listed in the bibliography below [and] publications listed in my curriculum vitae[.]" Doc. No. 116-2 p. 14. However, articles contained in the bibliography and curriculum vitae will not be admitted. The jury shall not be asked to perform its own expert analysis based on the scientific literature. These documents would be potentially prejudicial and a waste of time and are therefore excluded under Fed. R. Evid. 403.

---

[6]The Court does not establish what the specific relevant time period is. However, the Court holds that events that are too temporally distant from the hotel stay in these cases are not relevant and will not be admitted.

**III. Motion to Strike Testimony of Dr. Samkoff[7]**

**A. Dr. Samkoff's Qualifications**

Dr. Samkoff is an epidemiologist who also teaches epidemiologic study design and analysis. Doc. No. 140 p. 2. Defendants argue that Dr. Samkoff lacks experience in diagnosing Legionnaire's Disease, because she does not treat Legionnaire's Disease patients, nor has she ever diagnosed anyone with the disease. *Id.* at p. 3. However, Dr. Samkoff appears to be well-versed in the symptoms of Legionnaire's Disease and is an expert in epidemiology. Doc. No. 114-6 pp. 2-5. The Court holds that Dr. Samkoff is qualified to testify as to whether or not the pneumonia suffered by Plaintiffs was Legionnaire's Disease and the likely source of the infection, based on factors common to the Plaintiffs and her epidemiological expertise.

**B. Dr. Samkoff's Opinions and Conclusions[8]**

Based on records supplied by Plaintiffs' counsel, Dr. Samkoff made two conclusions in each case: (1) that the illness Plaintiffs suffered was Legionnaire's Disease;[9] and (2) that the illness was

---

[7]Defendants did not move to strike the testimony of Judith Samkoff in Case No. 6:06-cv-556, perhaps because the Plaintiff in that case tested positive for *Legionella*. Defendants did move to strike Dr. Samkoff's testimony in the remaining cases (Case Nos. 6:06-cv-650, 6:06-cv-660, 6:06-cv-661, 6:06-cv-662, 6:06-cv-663, and 6:06-cv-891).

[8]Dr. Samkoff corrected "typographical and factual errors" in her reports in January of 2008, but these changes did not alter her conclusions. Doc. No. 140-6.

[9]Dr. Samkoff gives her conclusions "to a reasonable degree of epidemiologic certainty" in five cases. In the case of Plaintiff Anita Comeau, Dr. Samkoff's opinions are stated to be "more probable than not," rather than made "to a reasonable degree of epidemiologic certainty." *See* Case No. 6:06-cv-891 Doc. No. 104-2 p. 7. The only other appreciable difference between the conclusions for Ms. Comeau and the other Plaintiffs is that Dr. Samkoff stated that Ms. Comeau might have had Legionnaire's Disease *or* Pontiac Fever (a less debilitating disease also caused by *Legionella*). *Id.*

caused by vapor from the indoor whirlpool spa at the Sea Garden Inn.  Doc. No. 114-2 p. 6.  While Dr. Samkoff's epidemiologic opinions vary between Plaintiffs based on individualized factors such as pre-existing conditions, symptoms and test results, Dr. Samkoff made the same two ultimate conclusions for Plaintiffs in all of the cases.

Dr. Samkoff reported individualized information on the Plaintiffs, but the arguments Defendants made for striking her testimony are the same in all of the cases.  For instance, while Plaintiff Louis Brown (Case No. 6:06-cv-661 Doc. No. 114 p. 2) had eight negative tests, and Plaintiff Irvine Barton (Case No. 6:06-cv-663 Doc. No. 79 p. 2) had only one negative test, Defendants argue in both cases that Dr. Samkoff ignored negative results.  Thus, the Motions to Strike Dr. Samkoff's testimony in all the cases may be addressed by one Order.

Defendants argue that Dr. Samkoff's opinions and conclusions are misleading, biased, and unreliable.  Doc. No. 114 pp. 1, 9-11.  Plaintiffs respond that Dr. Samkoff's testimony is based on valid and reliable scientific methods.  Doc. No. 140 pp. 4-6.  Defendants also argue that Dr. Samkoff relies on standards and definitions rejected by the Centers for Disease Control and Prevention ("CDC").  Doc. No. 114 pp. 9-11.  However, Defendants may present their own expert to testify as to what Defendants believe is the proper standard for determining whether patients suffered Legionnaire's Disease.  The Court will not assess whether the CDC's definition of Legionnaire's Disease is the best definition (*Id.* at p. 9), nor whether the CDC's outbreak definition or case surveillance definition is the proper standard for an expert to use.  *Id.; see also* Doc. No. 114-3 pp. 2-3; Doc. No. 140-8 pp. 1, 3; Doc. No. 140 p. 8.  Plaintiffs correctly point out that the jury will decide the matter by weighing the testimony of the competing experts.  Doc. No. 140 pp. 9-10.  Similarly, Defendants can present their objections to Dr. Samkoff's interpretations of the negative lab results

through their own expert at trial. Doc. No. 114 pp. 9-10. Thus, the Court holds that Dr. Samkoff's conclusions and opinions are admissible and denies the Motion to Strike.

**IV. Motion to Strike Testimony of Dr. Paul Sedacca**

**A. Dr. Sedacca's Qualifications and Opinions**

Dr. Sedacca has been a licensed physician since 1977. Doc. No. 138-2 p. 2. He practices internal medicine in Philadelphia and is a "disability evaluator," a doctor who sees patients who claim they are not able to work because of injury or illness. Sedacca Dep. (Doc. No. 115-3) pp. 15-17. Dr. Sedacca is not an infectious disease specialist, but he is familiar with Legionnaire's Disease from residency training in the late 1970s. *Id.* at pp. 41-42. Dr. Sedacca never examined the Plaintiffs nor communicated with them himself (*Id.* at p. 40), but he read the Plaintiffs' medical records and deposition testimony. Doc. No. 115-2 p. 2. Dr. Sedacca has also reviewed the reports of Plaintiffs' third expert, Dr. Samkoff. Sedacca Dep. (Doc. No. 115-3) p. 122.

Dr. Sedacca opined that Plaintiffs "did contract an acute *Legionella* infection as a result of [his/her] hotel stay in Florida" and that Plaintiffs "did sustain infection with the *Legionella* bacteria, which caused [his/her] *Legionella* infection, which [they] directly contracted while . . . guest[s] at the Sea Garden Inn in Florida." Doc. No. 115-2 pp. 2-3. These opinions lack a substantial basis. Plaintiffs argue that Dr. Sedacca is "emphatically not being offered to opine on causation[,]" (Doc. No. 138 p. 4), but statements in his expert report that the contracting *Legionella* at the Sea Garden Inn caused Plaintiffs' injuries belie this claim. *See* Doc. No. 115-2 pp. 2-3. The opinions of an expert will not be accepted if based on merely the ipse dixit of the expert. *Frazier*, 387 F.3d at 1261. Thus, the Court strikes Dr. Sedacca's testimony as inadmissible under *Daubert*.

Dr. Sedacca's opinion that the Plaintiffs continue to suffer decreased energy or fatigue, "consistent with post-exposure Legionnaire's Disease" is based solely on the Plaintiffs' depositions. Doc. No. 115-2 p. 2. Plaintiffs claim that Dr. Sedacca is being called to opine on "diagnosis and treatment." Doc. No. 138 p. 4. However, this testimony would be duplicative of the testimony of the treating physician or Plaintiffs themselves as to their ongoing injuries. Dr. Sedacca's testimony is no more reliable than Plaintiffs' own reports and will not be admitted.

Dr. Sedacca's opinion that the treatment and evaluation that the Plaintiffs received were reasonable and necessary is not relevant or useful to the trier of fact. Doc. No. 115-2 p. 3. Defendants do not contend that the care received by Plaintiffs was unnecessary or unreasonable. Thus, there is no need to present expert testimony on this issue. For these reasons, the Court grants Defendants' Motion to Strike the testimony of Dr. Sedacca.

**B. Form and Substance of Dr. Sedacca's Report**

Dr. Sedacca's expert report consists of letters totaling between two and four pages per case. Doc. No. 115-2. Dr. Sedacca fails to outline the basis for his expert opinion in each case in these brief letters. *Id.* Dr. Sedacca merely cites to papers he has read relating to the disease and states that he has reviewed the Plaintiffs' medical records and depositions. *Id*. at pp. 2-3. He does not indicate what particular facts or circumstances in these cases lead him to the opinions he holds. *Id*. at pp. 2-4. Dr. Sedacca's expert reports fail to comply with the requirements of Fed. R. Civ. P. 26(a)(2)(B), which requires a complete statement of all opinions and the basis for them, data or other information considered, any exhibits to be used, the witness's qualifications, a list of cases in which the witness has testified, and a statement of the compensation to be paid to the witness. Contrary to Plaintiffs' argument, the failure to comply is not "minor." Doc. No. 138 pp. 4-7. Even if the Court found Dr.

Sedacca was a qualified expert, failure to comply with Fed. R. Civ. P. 26 would provide an alternate basis for striking Dr. Sedacca's testimony. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at trial, unless the failure was substantially justified or harmless.")

**V.  Motion in Limine**

Defendants filed a Consolidated Motion in Limine in each case, seeking to exclude numerous types of evidence from trial. The motions address the same evidence in each case, though the memoranda vary by referencing facts and documents specific to each Plaintiff. *See, e.g.,* Doc. No. 151 pp. 12, 13 (numbered exhibits); *compare* Case No. 6:06-cv-660 Doc. No. 142 pp. 12, 13. Because the Court's analysis of the Motions in Limine is not dependent on Plaintiff-specific facts, the Court issues one Order on the Motions in Limine in all seven cases. The Court addresses in turn each type of evidence Defendants seek to have excluded.

**A.  Evidence of illnesses of any other guest or employee of Sea Garden Inn in January 2006, including use of the term "outbreak"**

Defendants seek to prevent Plaintiffs from using the term "outbreak" and from referencing any other allegedly ill guest or employee of the Sea Garden Inn. Doc. No. 151 pp. 6-8. Defendants argue that the existence of other guests who fell ill should be kept out of each Plaintiff's lawsuit to prevent Defendants from having to defend themselves against every allegation in every suit. Doc. No. 151 p. 6. Plaintiffs respond that the existence of multiple similar illnesses at the same time and place is probative as to whether *Legionella* bacteria was present at the Sea Garden Inn. Doc. No. 160 p. 2.

The Court holds that evidence of other illnesses in guests and employees of the hotel is relevant to the extent that these other illnesses occurred in the relevant time period. An alleged illness that arose a year after Plaintiffs' illnesses would not be relevant and would not be admitted. However, evidence of other Plaintiffs' illnesses that are sufficiently similar in time and circumstances will be admitted. So long as the conditions of the other injuries and the injuries alleged are sufficiently similar, evidence of other occurrences is relevant and may function as "a crude version of a retrospective epidemiological study." McCormick on Evidence § 200 p. 803 (Broun et. al. eds., 6th ed. 2006) (citations omitted). Here, Plaintiffs have had very similar injuries occurring within a relatively short time, and evidence of these similar occurrences is admissible.

The parties may also use the term "outbreak." The parties may present competing interpretations as to what constitutes an "outbreak" and let the jury determine whether there was an outbreak at the Sea Garden Inn. The use of the word "outbreak" itself will not overly prejudice Defendants. Thus, the Court denies Defendants' Motion in Limine with respect to the mention of an "outbreak" and other cases of illness from the relevant time period.[10]

---

[10]Defendants request that the Court redact or exclude numerous exhibits proposed by Plaintiffs, because they reference other Plaintiffs' illnesses, the death of Ms. Jacqueline Gianfriddo, and maintenance and inspection of the hotel after February 3, 2006. *See, e.g.,* Doc. No. 151 pp. 9-10. The Court declines to rule now on the admissibility of these specific exhibits. However, based on the Court's ruling here, the parties will likely be able to discern what documents will be admitted. *See infra* pp. 15-16.

**B. Evidence of the death of Ms. Jacqueline Gianfriddo**

The Court grants Defendants' Motion in Limine with respect to the mention of the death of Ms. Jacqueline Gianfriddo. Reference to the fact that Ms. Gianfriddo has died during the trial of any of these cases would be more prejudicial than probative and is therefore excluded pursuant to Fed. R. Evid. 403. Exhibits indicating that she has died will not be admitted. However, as stated above, evidence of the fact that Ms. Gianfriddo fell ill may be relevant if her illness was sufficiently similar in time and circumstance.

**C. Evidence of an alleged case of Legionnaires' Disease reported by an individual who may have stayed at the Sea Garden Inn in February 2007**

The Court grants Defendants' Motion in Limine with respect to the mention of an individual who may have contracted Legionnaire's Disease at the Sea Garden Inn in February 2007. A case of the disease that comes a year after the illnesses giving rise to the cases at hand is not relevant to these lawsuits. Thus, the Court excludes this evidence under Fed. R. Evid. 402.

**D. Other related lawsuits pending against Defendants**

The Court grants in part and denies in part Defendants' Motion in Limine with respect to other lawsuits against Defendants to the extent that in these cases, no party will be permitted to go into detail regarding the other pending lawsuits. However, mere mention of the fact that other lawsuits are pending is not objectionable, just as, stated above, the existence of other similar cases of illness is relevant. *See infra* pp. 9, 13-14. However, mention of the outcome of those suits would be overly prejudicial and is therefore inadmissible.

**E. Evidence of maintenance issues and inspections of the Sea Garden Inn after February 3, 2006**

Defendants argue that evidence of any inspections made of the Sea Garden Inn after February 3, 2006, should be excluded, because none of the Plaintiffs in these cases stayed at the hotel after February 3, 2006. Doc. No. 151 p. 12. As discussed above, the Court will not admit evidence regarding maintenance issues, inspections, or other events that occurred well after the time period of Plaintiffs' illnesses. *See infra* p. 9, 13-14. However, the Court declines to preclude the use of any maintenance issue or inspection that occurred after the last Plaintiff checked out of the Sea Garden Inn. Certainly, an inspection on February 4, 2006, would still be relevant, while an inspection or maintenance issue in October 2006 or February 2007, would not be relevant. Doc. No. 151 pp. 12-13. Thus, the Court denies Defendants' Motion in Limine to the extent that it seeks to exclude any maintenance issues or inspections after February 3, 2006, but grants the Motion in Limine insofar as it seeks to exclude events in October 2006 and February 2007.

**F. Evidence of mold at the Sea Garden Inn**

The Court denies Defendants' Motion in Limine with respect to use of evidence showing the existence of mold at the Sea Garden Inn. Doc. No. 151 pp. 13-14. While the parties will be permitted to present evidence of mold at the Sea Garden Inn in late 2005 and early 2006, neither party may shift the focus away from the real issue of whether the Plaintiffs were exposed to and injured by *Legionella* bacteria, not mold.

**G. Evidence of Defendants' ownership of other hotels**

Defendants seek to prevent Plaintiffs from introducing evidence that Defendants own and operate other hotels. Doc. No. 151 p. 14. Defendants argue that this evidence is irrelevant to the issue of causation at the Sea Garden Inn. *Id.* Plaintiffs respond that evidence of ownership of other hotels

is relevant to the determination of punitive damages as well as to whether Defendants were aware of the conditions that led to Plaintiffs' infections. Doc. No. 160 p. 8. The Court holds that the ownership of other hotels is not relevant to whether conditions at the Sea Garden Inn caused Plaintiffs' injuries. Both sides will present evidence as to the proper standard of spa and pool care by a hotel owner. Whether Defendants own other hotels is not relevant to whether they met the required standard of care at this particular location. While the value of Defendants' assets may be relevant to the issue of punitive damages, the ownership of other hotels is not. Thus, the Court grants Defendants' Motion in Limine with respect to evidence of Defendants' ownership of other hotels.

**H. Plaintiffs' Timeline Exhibit**

Defendants seek to exclude Exhibit A (Doc. No. 151-2), Plaintiffs' proposed timeline exhibit. Doc. No. 151 p. 17. While Plaintiffs may employ demonstrative evidence that sets forth dates and scientific facts, Exhibit A in its current form contains dates and events from time periods that have been deemed irrelevant and inadmissible. *See* Doc. No. 151-2 pp. 4-5. Additionally, Exhibit A contains argument presented as fact as well as typographical errors that may confuse the jury. *Id.* at p. 3. In its current form, Exhibit A is not admissible, and Defendants' Motion in Limine is granted with respect to this document.

**I. Res Ipsa Loquitur**

The Court grants Defendants' Motion in Limine with respect to the issue of whether Plaintiffs may present a res ipsa loquitur theory. Causation is the main issue to be tried and may not be presumed here. This is not a case where the Plaintiffs are unable to establish facts on causation and therefore require the inference of res ipsa loquitur. *See Marrero v. Goldsmith*, 486 So. 2d 530, 532 (Fla. 1986) ("There comes a point . . . when a plaintiff can introduce enough direct evidence of

negligence to dispel the need for the inference). Nor is this a case of extraordinary injury and clear exclusive control by Defendants. While it is certainly meaningful that numerous hotel guests fell ill, Plaintiffs engaged in many activities outside the hotel between December 2005 and February 2006. Their exposure to *Legionella* was not in Defendants' exclusive control. *Compare W. Coast Hospital Ass'n v. Webb*, 52 So. 2d 803, 804 (Fla. 1951) (where a hospital patient who woke up with burns was entitled to a res ipsa instruction). For these reasons, the Court grants Defendants' Motion in Limine with respect to res ipsa loquitur.

**Conclusion**

Based on the foregoing, it is ORDERED as follows:

1. Defendants' Motion to Strike Plaintiffs' Expert Designation and Opinions of Matthew Freije (Case No. 6:06-cv-661 Doc. No. 116) is GRANTED in part and DENIED in part. The corresponding motions in the six other related cases are also GRANTED in part and DENIED in part (Case No. 6:06-cv-556 Doc. No. 84; Case No. 6:06-cv-650 Doc. No. 79; Case No. 6:06-cv-660 Doc. No. 107; Case No. 6:06-cv-662 Doc. No. 77; Case No. 6:06-cv-663 Doc. No. 81; Case No. 6:06-cv-891 Doc. No. 106).

2. Defendants' Motion to Strike Plaintiffs' Expert Designation and Opinions of Dr. Judith Samkoff (Case No. 6:06-cv-661 Doc. No. 114) is DENIED. The corresponding motions in the five[11] other related cases where Defendants moved to strike Dr. Samkoff's testimony are also DENIED (Case No. 6:06-cv-650 Doc. No. 77; Case No. 6:06-cv-660 Doc. No. 105; Case No. 6:06-cv-662 Doc. No. 75; Case No. 6:06-cv-663 Doc. No. 79; Case No. 6:06-cv-891 Doc. No. 104).

---

[11]As stated previously, Defendants did not move to strike Dr. Samkoff's testimony in Case No. 6:06-cv-556.

3. Defendants' Motion to Strike Plaintiffs' Expert Designation and Report of Dr. Paul J. Sedacca (Case No. 6:06-cv-661 Doc. No. 115) is GRANTED. The corresponding motions in the six other related cases are also GRANTED (Case No. 6:06-cv-556 Doc. No. 83; Case No. 6:06-cv-650 Doc. No. 78; Case No. 6:06-cv-660 Doc. No. 106; Case No. 6:06-cv-662 Doc. No. 76; Case No. 6:06-cv-663 Doc. No. 80; Case No. 6:06-cv-891 Doc. No. 105).

4. Defendants' Consolidated Motion in Limine (Case No. 6:06-cv-661 Doc. No. 151) is GRANTED in part and DENIED in part. The corresponding Motions in Limine in the six other related cases are also GRANTED in part and DENIED in part (Case No. 6:06-cv-556 Doc. No. 117; Case No. 6:06-cv-650 Doc. No. 114; Case No. 6:06-cv-660 Doc. No. 142; Case No. 6:06-cv-662 Doc. No. 112; Case No. 6:06-cv-663 Doc. No. 117; Case No. 6:06-cv-891 Doc. No. 140).

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on June 6,2008.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:
Counsel of Record